N.R. SMITH, Circuit Judge,
dissenting:
I join the dissent of Judge Callahan. I agree that the majority errs “by answering only a narrow question — whether the Second Amendment protects a right to carry concealed firearms in public.” Dissent 946. I write separately only to express my opinion that the appropriate remedy is to remand this case to the district courts.
I.
This case turns on how the applicable issue is framed. The majority states the issue narrowly — whether the “Second Amendment ... preserved] or protects] a right to carry concealed firearms in public.” Maj. Op. 924. In contrast, the dissent[1] asks whether “[i]n the context of California’s choice to prohibit open carry,” the counties’ restrictions on concealed carry violate the Second Amendment. Dissent 950 (emphasis added).
As a result of this difference in framing the applicable issue, the majority’s arguments and the dissent’s arguments are often like “two ships passing in the night.” For example, the majority engages in a lengthy academic exercise to reach the conclusion that “the carrying of concealed weapons was consistently forbidden in England beginning in 1541; was consistently forbidden in the American colonies; and was consistently forbidden by the states.” Maj: Op. 941. This historical analysis is relevant to the issue framed by the majority, but it is irrelevant to the issue framed by the dissent “because it again fails to appreciate' the contexts in which the cited cases arose.” Dissent 952 (emphasis added).
The majority’s historical analysis is also unnecessary to resolve the issue as framed by the majority opinion. In District of Columbia v. Heller, the Supreme Court explicitly recognized that prohibitions on carrying concealed weapons were appro *959 priate for regulating the manner in which individuals could exercise their Second Amendment rights.[2] 554 U.S. 570, 626, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). If the issue before us is truly whether California can, in isolation, prohibit concealed carry, a simple memorandum disposition citing to Heller would be sufficient. A formal opinion, much less the gathering of our en banc panel, would not be necessary to answer the issue framed by the majority.
Accordingly, I agree with the dissent’s articulation of the relevant issue in this case. We should not review the counties’ concealed weapons licensing schemes in isolation. Instead, we must review them in the context of the underlying statutory scheme as a whole. That review is consistent with the Supreme Court’s approach in Heller.[3] It is also consistent with our court’s two-step Second Amendment inquiry. See Jackson v. City & Cty. of San Francisco, 746 F.3d 953, 961 (9th Cir. 2014) (noting that, under the second step of the inquiry, courts should consider whether firearm regulations “leave open alternative channels for self-defense”). Accordingly, we cannot ignore the context surrounding the counties’ concealed carry prohibitions.
II
During the pendency of these appeals, California’s underlying statutory scheme changed. At the time the district courts issued their decisions, California permitted unloaded open carry. However, under the current scheme, open carry (loaded and unloaded) is prohibited. See Dissent 949-50. Further, as noted by the dissent, the district courts did not have the benefit of our recent decisions in Jackson, 746 F.3d 953 and United States v. Chovan, 735 F.3d 1127 (9th Cir. 2013). See Dissent 951.
We have consistently concluded that, when confronted with an intervening change in law, the better approach would be to remand for the district court to consider the case under the new legal framework. See, e.g., Betz v. Trainer Wortham & Co., 610 F.3d 1169, 1171 (9th Cir. 2010) (discussing why “remand is the better procedure” when an intervening change in the law required further analysis of the facts of the case); Baker v. Hazelwood (In re Exxon Valdez), 270 F.3d 1215, 1241 (9th Cir. 2001) (noting that, in cases where there is an intervening change in the law, it will often be “the better approach” to remand for the district court to “apply the appropriate standards”); White Mountain Apache Tribe v. Ariz., Dep’t of Game & Fish, 649 F.2d 1274, 1285-86 (9th Cir. 1981) (“This court may remand a case to the district court for further consideration when new cases or laws that are likely to influence the decision have become effective after the initial consideration.”).
Of course, we have discretion to determine “what questions may be taken up and *960 resolved for the first time on appeal.” Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). We typically feel most comfortable resolving such an issue when it has nonetheless been “extensively litigated in the district court” or “where the proper resolution is beyond any doubt.” Beck v. City of Upland, 527 F.3d 853, 867 (9th Cir. 2008) (quoting Golden Gate Hotel Ass’n v. City & Cty. of San Francisco, 18 F.3d 1482, 1487 (9th Cir. 1994)). However, neither circumstance is present here. The issue at hand — whether the counties’ licensing scheme for concealed carry violates the Second Amendment in light of California’s restrictions on open carry — was not litigated in the district courts. Further, as is apparent from the various opposing views of my colleagues, proper resolution of this issue is not beyond any doubt.
Indeed, we would benefit greatly from the district courts’ expertise in developing the record and applying the appropriate standards in light of California’s significant intervening change in its legal framework. I agree that the “challenged law burdens conduct protected, by the Second Amendment.” Chovan, 735 F.3d at 1136. I would therefore remand to allow the district courts to initially determine and “apply an appropriate level of scrutiny.” Id.
Accordingly, I dissent.

. All references to the dissent refer to the dissent of Judge Callahan.

. The Supreme Court also recognized that context was important when reviewing a statute that regulates rights secured by the Second Amendment. "A statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defence, would be clearly unconstitutional.” Heller, 554 U.S. at 629, 128 S.Ct. 2783 (quoting State v. Reid, 1 Ala. 612, 616-17 (1840)).

. Heller involved, in part, various prohibitions in the District of Columbia that (i) made it a crime to carry an unregistered firearm, (ii) prohibited the registration of handguns, and (iii) required a license to carry a handgun. Heller, 554 U.S. at 574-75, 128 S.Ct. 2783. The Supreme Court did not review these prohibitions in isolation, but instead concluded that the various prohibitions together "totally ban[ned] handgun possession in the home.” Id. at 628, 128 S.Ct. 2783.