TALLMAN, Circuit Judge, concurring in part and dissenting in part: I concur in the majority’s decision to affirm the district court’s dismissal of the Second Amendment facial challenge. Majority Op. II. A-C. However, I respectfully dissent from the dismissal of the constitutional- challenge as applied to Teixeira. Majority Op. II. D. The majority’s analysis of the Second Amendment challenge to locating a full-service gun shop in an unincorporated area of Alameda County, which I will call San Lorenzo, - substantially interferes with the right of its customers to keep and bear arms. The impact of this county ordinance on the fundamental rights enshrined in the Second Amendment cannot be viewed in a vacuum without- considering gun restrictions in California as a whole. I fear today’s decision inflicts yet another wound on our precious constitutidnal right. Teixeira’s facial Second Amendment challenge fails because appellants cannot •demonstrate that the zoning ordinance is unconstitutional in all of its applications. United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Notably, Teixeira did not allege that none of the existing gun stores in the county can coniply with the ordinance.[1] The district court properly dismissed the facial challenge to Alameda County’s zoning ordinance. Teixeira, however, has the better argument on the as-applied challenge. Teixeira alleges that the restrictive zoning rules in the ordinance make it virtually impossible to open a new, full-service gun store in unincorporated Alameda County, and that makes it very difficult for individuals who wish to exercise their Second Amendment rights to obtain, maintain, and comply with the burdensome California state and federal laws which govern acquisition, ownership, carrying, and possession of firearms protected by the Second Amendment. Teixeira should be permitted to engage in further fact-finding to test whether the ordinance meets at least intermediate scrutiny in establishing its challenge. We have adopted a two-step inquiry: (1) “whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, .. ’ to apply an appropriate level.of scrutiny.” United States v. Chovan, 735 F.3d 1127, 1136-37 (9th Cir. 2013). Step One asks whether the conduct falls outside the historical scope of the Second Amendment. If so, the claim fails. To make this determination we ask: (1) whether" the regulation is one of the “presumptively lawful regulatory measures” identified in District of Columbia v. Heller, 554 U.S. 570, 627 n.26, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), or (2) “whether the record includes persuasive -historical evidence establishing that the regulation at issue imposes prohibitions that fall outside the historical scope of the Second Amendment.” Jackson v. City and Cty. of San Francisco, 746 F.3d 953, 960 (9th Cir. 2014). If neither of these are met, then the law falls within the historical scope of the Second Amendment and the analysis proceeds to Step Two. Under Step Two the appropriate level of scrutiny is determined by examining how closely the law comes to the core of the burdened Sécond Amendment right and the severity of that burden. Choran, 735 F.3d at 1138. First, we m,ust determine if Alameda Countys ordinance is a “presumptively lawful regulatory measure” as identified in Heller. 554 U.S. at 627 n. 26, 128 S.Ct. 2783. The majority properly notes that the Supreme Court’s language is “opaque,” but declines to clarify this precedent for our circuit. Majority Op. at 682-83. In Heller, the Court declared “nothing in our opinion should be taken to cast doubt on longstanding ... laws imposing conditions and qualifications on the commercial sale of arms.” 554 U.S. at 626-27, 128 S.Ct. 2783. These are “presumptively lawful regulatory measures.” Id. at 627.n.26,128 S.Ct. 2783. As I read the footnote, “longstanding regulatory measures” refers to congressional measures that regulate the sale of firearms, such as the validity of the Federal Firearms Act, its implementing regulations, and the Bureau of Alcohol, Tobacco, Firearms and Explosives’ historical enforcement of sales, exchanges, and prohibitions on dealing in certain types of firearms and with potential customers. McDonald v. City of Chicago, 561 U.S. 742, 777, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). Justice Scalia’s footnote in Heller could not have been addressing county ordinances meant to restrict firearm acquisition and possession as much as a local government can get away with. The record here establishes beyond cavil the animus of the Alameda County Board of Supervisors to Second Amendment rights. I agree with Judge Bea that the Alameda County ordinance does not fall within the Heller categories and does not earn its presumption of lawfulness. See Bea dissent at pp. 698-99. Nevertheless, even if we found that the ordinance fell within the Heller categories and was “presumptively lawful,” that presumption is subject to rebuttal. Teixeira should have been permitted to return to the district court to conduct discovery and “rebut, this presumption by showing the regulation does have more than a de min-imis effect upon his [claimed Second Amendment] right.” Heller, v. District of Columbia, 670 F.3d 1244, 1273 (D.C. Cir. 2011) (Heller II). Second, if a law does .not fit within the language of Heller, the court determines if a challenged regulation prohibits conduct that was traditionally protected by the Amendment. Jackson, 746 F.3d at 960. The majority concludes “the Second Amendment does not confer a free standing right, wholly detached from any customer’s ability to acquire firearms, upon a proprietor of a commercial establishment to sell firearms.” Majority Op. at 682. Maybe so. But we need not find a freestanding right to sell firearms. Rather, the ability of lawful gun owners to find a reasonably available source to buy, service, test, and properly license firearms is an attendant right to the fundamental right to bear arms.[2] The majority properly notes that the “Second Amendment protects ancillary rights necessary to the realization of the core right to possess firearms for self-defense,” but fails to apply that protection here to ensure the ordinance imposes no unreasonable restrictions on the right to lawfully acquire and maintain firearms for the defense of hearth and home. Majority Op. at 676. We found in Jackson that a regulation which “eliminate[ed] a person’s ability to obtain or use ammunition” was subject to heightened scrutiny because it had the potential to make “it impossible to use firearms for their core purpose.” 746 F.3d at 967. We face an analogous situation. The Alameda County zoning ordinance precludes Teixeira from opening a new gun store in San Lorenzo. The lawful sale of arms to qualified people who wish to acquire and keep them for employment (e.g., police officers .and security guards), self-defense, hunting, target shooting, protection of commercial occupations—such as carrying valuables like diamonds, protection of business premises, or other such legal purposes—need freedom to purchase and maintain the very arms they have the right to bear. Without the ability to establish reasonable locations that sell and service these arms, the ordinance “make[s] it impossible to use firearms for their core purpose” of self-defense. Id. As applied here, the ordinance potentially renders the right to bear arms meaningless. When considered in combination with similar burdensome regulations by other San Francisco Bay Area cities and counties, local officials do not need to explicitly ban firearms to block gun owners from reasonable access to gun stores.[3] Cf. Ill. Ass’n of Firearms Retailers v. City of Chicago, 961 F.Supp.2d 928 (N.D. Ill. 2014) (striking down an ordinance seeking to prohibit all firearms sales). The ability to acquire guns and ammunition, and to keep them in operable condition, is “indispensable to the enjoyment” of the fundamental right to bear arms as much as access to a shooting range. Ezell v. City of Chicago, 651 F.3d 684, 704 (7th Cir. 2011); Richmond Newspapers v. Virginia, 448 U.S. 555, 579, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). Judge O’Scannlain’s scholarly opinion for our panel in this case explains why this is true. See 822 F.3d 1047, 1053-56 (9th Cir. 2016). All would agree that a complete ban on the sale of firearms and ammunition would be unconstitutional. History supports the view that the Second Amendment must contemplate the right to sell firearms if citizens are to enjoy the core, fundamental right to own and possess them in their homes. Choran, 735 F.3d at 1133. The majority recounts that states historically imposed criminal sanctions for giving or selling arms to the Indians. Majority Op. at 31. They urge this is evidence that the right to sell arms was not implicated by the Second Amendment.. However, this merely reiterates the longstanding prohibition on the sale of firearms to certain forbidden persons acknowledged in Heller. At the time such discriminatory laws were adopted, the fledgling Nation was treating our ancestral inhabitants as if they were convicted felons or illegal aliens, who today are still banned by law from possessing or acquiring firearms. 18 U.S.C. § 924; 27 C.F.R. § 478.32. In light of the British embargo on the sale of arms in 1774 to prevent the Colonists from resisting the tyranny of King George III, it is understandable that the Framers would want to protect not only the right to bear arms, but correspondingly, the right to sell and acquire them. See David B. Kopel, How the British Gun Control Program Precipitated the American Revolution, 6 Charleston L. Rev. 286 (2012). Throughout history and to this day the sale of arras is ancillary to the right to bear, arms.[4] Based upon the Second Amendment’s text and history, the Alameda County ordinance imposes prohibitions that may indeed fall within the scope of Second Amendment protection. Therefore, we must reach Step Two and ask whether the ordinance unduly interferes with the right to acquire and possess firearms for self-defense. So long as the ordinance does not unduly impede that right, it will ultimately pass constitutional muster. But plaintiffs are entitled to try to establish evidence through discovery to support their' plausible claim. Teixeira has stated sufficient grounds, which, if supported by such discovery, may well undermine the nexus between the means chosen and the ends sought when examined under the lens of at least intermediate scrutiny. Today’s decision perpetuates our continuing infringement on the fundamental right of gun owners enshrined in the Second Amendment. We cannot analyze constitutional rights in a vacuum; instead, we must analyze the totality of the impact of gun control regulations like these—local, state, and federal—in determining how severely the fundamental liberty protected by the Second Amendment is being burdened. In states like California, that burden is becoming substantial in light of continuing anti-gun legislation[5] and our decisions upholding such laws. See Chovan, 735 F.3d 1127 (9th Cir. 2013); Jackson, 746 F.3d 953 (9th Cir. 2014) (upholding an ordinance requiring handguns inside the home to be stored in locked containers or disabled with a trigger lock when not being carried on the person); Peruta v. Cty. of San Diego, 824 F.3d 919 (9th Cir. 2016) (en banc), cert. denied, — U.S. —, 137 S.Ct. 1995, 198 L.Ed.2d 746 (2017) (holding the Second Amendment does not protect the right to carry a concealed weapon in public where the sheriffs policy required “good cause” to obtain permits to do so, and refused applicants who could offer no justification beyond claiming the need for self-defense); Silvester v. Harris, 843 F.3d 816 (9th Cir. 2016) (upholding a 10-day waiting period for purchasers who already had a concealed-carry permit and already cleared a background check); Nordyke v. King, 681 F.3d 1041 (9th Cir. 2012) (upholding an Alameda County ordinance that regulates the sale of firearms at gun shows). Our cases continue to slowly carve away the fundamental right to keep and bear arms. Today’s decision further lacerates the Second Amendment, deepens the wound, and resembles 'the Death by. a Thousand Cuts. . The complaint concedes and its attachments state that there is at least one such store that has complied with the Alameda County ordinance and sells firearms to county residents, Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008) ("We need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint.”). . I disagree with the majority’s assumption that the existing federally licensed gun stores elsewhere in the county offer the full range of services Teixeira proposed to offer in San Lorenzo. The West County Board of Zoning Adjustments approved a variance for Teix-eira's location and stated that "Unincorporated Alameda County currently has four (4) licensed firearms sales business [sic],” Merely possessing such a license tells us nothing about whether the licensee sells only long guns, handguns, or ammunition. Nor can we tell whether gunsmithing services, training/education classes, a target range, or anything else attends mere possession of the license at each location. . And it is no answer, as my colleagues suggested in Jackson, that while San Francisco could ban the sale of hollow point ammunition (carried by many law enforcement officers), putative purchasers could simply buy their ammunition elsewhere and bring it back to San • Francisco since it was not illegal to possess hollow point rounds. 746 F.3d at 968. . "Our citizens have always been free to make, vend, and export arms. It is the constant occupation and livelihood of some of them.” Teixeira v. County of Alameda, 822 F.3d 1047, 1055 (9th Cir. 2016) (quoting Thomas Jefferson, 3 Writings 558 (H.A. Washington ed., 1853)). . Peruta v. Cty. of San Diego outlines part of California’s “multifaceted statutory scheme regulating firearms.” 824 F.3d at 925-26; see abo Cal. Penal Code Pt. 6, T. 4 .(regulating firearms generally); see also Cal. Penal Code Pt. 6, T. 4, D. 5 (regulating the carrying of firearms in California).