William WIESE, an individual; Jeermiah Morris, an individual; Lance Cowley, an individual; Sherman Macaston, an individual; Adam Richards, in his capacity as Trustee of the Magazine Ban Lawsuit Trust; Clifford Flores, individually and as trustee of the Flores Family Trust; L.Q. Dang, an individual; Frank Federeau, an individual; Alan Normandy, an individual; Todd Nielsen, an individual; The Calguns Foundation; Firearms Policy Coalition; Firearms Policy Foundation; and Second Amendment Foundation, Plaintiffs,

v.

Xavier BECERRA, in his official capacity as Attorney General of California; and Martha Supernor, in her official capacity as Acting Chief of the Department of Justice Bureau of Firearms, Defendants.

Civ. No. 2:17–903 WBS KJN

United States District Court, E.D. California.

Signed 06/29/2017

---

988

George M. Lee, Douglas Allen Applegate, Seiler Epstein Ziegler & Applegate LLP, San Francisco, CA, Raymond Mark Diguiseppe, Law Offices of Raymond Mark Diguiseppe, Southport, NC, for Plaintiffs.

Alexandra Robert Gordon, CA. Dept. of Justice Office of the Attorney General, San Francisco, CA, John Darrow Echeverria, Office of the California Attorney General, Los Angeles, CA, for Defendants.

## MEMORANDUM AND ORDER RE: MOTION FOR PRELIMINARY INJUNCTION

### WILLIAM B. SHUBB, UNITED STATES DISTRICT JUDGE

Before the court is plaintiffs' Motion for Issuance of Preliminary Injunction. (Docket No. 28.) The court held a hearing on the request for a preliminary injunction on June 29, 2017.

### I. Factual and Procedural History

This case concerns a challenge to California's prohibition on the possession of gun magazines that can hold more than ten bullets, or "large capacity" magazines ("LCM").[1] Although California had banned the purchase, sale, transfer, receipt, or manufacture of such magazines since 2000,

---

1. Large capacity magazines are defined under California Penal Code § 16740 as any ammunition-feeding device with the capacity to accept more than ten rounds.

it did not ban the possession of these magazines. Fyock v. City of Sunnyvale, 779 F.3d 991, 994 (9th Cir. 2015). In effect, Californians were allowed to keep large capacity magazines they had obtained prior to 2000, but no one, with a few exceptions such as law enforcement officers, has been allowed to obtain new large capacity magazines since 2000.

On July 1, 2016, however, California enacted Senate Bill 1446 ("SB 1446"), which amended California Penal Code § 32310, criminalizing the possession of large capacity magazines as of July 1, 2017, regardless of when the magazines were obtained. Then, on November 8, 2016, the California electorate approved Proposition 63, which largely mirrors SB 1446. The amended version of Section 32310 enacted by Proposition 63 requires that anyone possessing a large capacity magazine either remove the magazine from the state, sell the magazine to a licensed firearms dealer, or surrender the magazine to a law enforcement agency for its destruction prior to July 1, 2017. Cal. Penal Code § 32310(d). The amended version of Section 32310 also provides that possession of a large capacity magazine as of July 1, 2017 constitutes an infraction or a misdemeanor punishable by a fine not exceed $100 per large capacity magazine and/or imprisonment in a county jail not to exceed one year. Id. § 32310(c).

On April 28, 2017, plaintiffs filed the instant action alleging that Section 32310 is unconstitutional. After amending their complaint, plaintiffs filed a motion for a temporary restraining order and preliminary injunction on June 12, 2017 and a renewed motion on June 14, 2017. The court denied the request for a temporary restraining order after a hearing on June 16, 2017 based on an insufficient showing of irreparable harm, given plaintiffs' delay in filing suit and the fact that the court would hold a hearing on plaintiffs' request for a preliminary injunction before the large capacity magazine ban took effect on July 1, 2017. (Docket No. 45.) The parties then filed supplemental briefs regarding plaintiffs' request for a preliminary injunction on June 23, 2017.

## II. Discussion

Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (citation omitted). In order to obtain a preliminary injunction, the moving party must establish (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); Fyock, 779 F.3d at 995–96.

Plaintiffs contend that California's large capacity magazine ban violates the Second Amendment, is an unconstitutional taking under the Fifth and Fourteenth Amendments, is void for vagueness, and is overbroad. The court proceeds to examine plaintiffs' showing with respect to each claim below.

### A. Second Amendment Challenge

#### 1. Likelihood of Success on the Merits

To evaluate a Second Amendment claim, the court asks whether the challenged law burdens conduct protected by the Second Amendment, and if so, what level of scrutiny should be applied. Fyock, 779 F.3d at 996 (citing United States v. Chovan, 735 F.3d 1127, 1136 (9th Cir. 2013)).

### a. Burden on Conduct Protected by the Second Amendment

There appears to be no dispute in this case that many people inside and outside of California up to this point have lawfully possessed large capacity magazines for lawful purposes. See Heller v. District of Columbia, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("Heller II") (finding that ´magazines holding more than ten rounds were in "common use"). Indeed, there is evidence that large capacity magazines are commonly possessed by law-abiding citizens for lawful purposes and have been legally possessed by many Californians for many years, notwithstanding California's ban on the transfer of such magazines since 2000. (See Curcuruto Decl. ¶¶ 6–8 (citing estimate that 114 million magazines with eleven or more rounds were in consumer possession between 1990 and 2015, just under half of the overall 230 million pistol and rifle magazines owned during that time); Pls.' Request for Judicial Notice, Ex. A (Cal. Dep't of Justice Finding of Emergency at 1) ("There are likely hundreds of thousands of large-capacity magazines in California at this time.... The Department therefore expects many gun owners to be affected by the new ban."); Youngman Decl. ¶ 9 (large capacity magazines are commonly owned by millions of persons in the United States for lawful purposes including target shooting, competition, home defense, collecting, and hunting).)

Thus, notwithstanding California's existing ban on the transfer of large capacity magazines, it appears that California's ban on large capacity magazines burdens conduct protected by the Second Amendment. See Fyock, 779 F.3d at 998 (district court

did not clearly err in finding that a regulation on large capacity magazines burdens conduct falling with the scope of the Second Amendment). But see Kolbe v. Hogan, 849 F.3d 114, 135–37 (4th Cir. 2017) (en banc) (large capacity magazines are not protected by the Second Amendment because they are weapons most useful in military service).[2]

### b. Appropriate Level of Scrutiny

██ In determining what level of scrutiny applies to the ban on large capacity magazines, the court considers (1) how closely the law comes to the core of the Second Amendment right, which is self-defense, and (2) how severely, if at all, the law burdens that right. Fyock, 779 F.3d at 998–99 (citing Chovan, 735 F.3d at 1138). Intermediate scrutiny is appropriate if the regulation does not implicate the core Second Amendment right or if the regulation does not place a substantial burden on that right. Id. at 998–99 (citing Jackson v. City & County of San Francisco, 746 F.3d 953, 964 (9th Cir. 2014)).

██ Here, the court finds that intermediate scrutiny is appropriate because "the prohibition of ... large capacity magazines does not effectively disarm individuals or substantially affect their ability to defend themselves." Heller v. District of Columbia, 670 F.3d 1244, 1262 (D.C. Cir. 2011) ("Heller II"); Fyock, 779 F.3d at 999 (quoting Heller II). The ban may implicate the core of the Second Amendment because it restricts the ability of law-abiding citizens to possess large capacity magazines within their homes for self-defense. See Fyock, 779 F.3d at 999. However, the ban "does not affect the ability of law-abiding citizens to possess the 'quintessen-

---

**2.** Because the court holds that California's large capacity magazine ban burdens conduct protected by the Second Amendment because these magazines are commonly possessed by law-abiding citizens for lawful purposes, the court does not examine whether the ban resembles longstanding provisions historically exempted from the Second Amendment. See Fyock, 779 F.3d at 997.

tial self-defense weapon'—the handgun. Rather, [it] restricts possession of only a subset of magazines that are over a certain capacity." Id. (quoting District of Columbia v. Heller, 554 U.S. 570, 629, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) ("Heller I")).

Indeed, it appears that virtually every other court to examine large capacity magazine bans has found that intermediate scrutiny is appropriate, assuming these magazines are protected by the Second Amendment. See Fyock, 779 F.3d at 999; Kolbe, 849 F.3d at 138–139; N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo, 804 F.3d 242, 258–60 (2d Cir. 2015); Heller II, 670 F.3d at 1261–62; S.F. Veteran Police Officers Ass'n v. City & County of San Francisco, 18 F.Supp.3d 997, 1002–04 (N.D. Cal. 2014). But see Friedman v. City of Highland Park, 784 F.3d 406 (7th Cir. 2015) (upholding municipal ban on assault weapons and large capacity magazines but declining to determine what level of scrutiny applied).

Accordingly, because California's ban does not substantially burden individuals' ability to defend themselves, intermediate scrutiny is appropriate.

c. Application of Intermediate Scrutiny

■ Intermediate scrutiny requires "(1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective." Fyock, 779 F.3d at 1000 (quoting Chovan, 735 F.3d at 1139). This test does not require that the government's regulation is the least restrictive means of achieving its interests. Rather, the government need only show that the regulation "promotes a substantial government interest that would be achieved less effectively absent the regulation." Id. (citation omitted). In reviewing the fit between the government's stated objective and the regulation, the court may consider legislative history as well as studies in the record or

applicable case law. Id. The evidence need only "fairly support" the state's rationale, and in making this determination, courts "afford substantial deference to the predictive judgments of the legislature." N.Y. State Rifle, 804 F.3d at 261 (citations omitted); see also Kolbe, 849 F.3d at 140 (court must give substantial deference to the legislature, because "it is the legislature's job, not ours, to weigh conflicting evidence and make policy judgments") (citations omitted).

■ One stated objective of California's large capacity magazine ban is to reduce the incidence and harm of mass shootings. (Gordon Decl., Ex. 50 § 2, ¶ 11; § 3, ¶ 8.) There can be no serious argument that this is not a substantial government interest, especially in light of several recent high profile mass shootings involving large capacity magazines, including the 2016 Orlando Pulse nightclub shooting, the 2015 San Bernardino shooting, the 2012 Aurora movie theater shooting, the 2012 Sandy Hook school shooting, the 2011 Arizona shooting involving then-U.S. Representative Gabrielle Giffords, and the 2007 Virginia Tech shooting, all of which resulted in multiple deaths and injuries. (See Webster Decl. ¶ 10; Graham Decl. ¶ 19; Donohue Decl. ¶ 29.)

Further, defendants have provided studies and expert analyses supporting their conclusion that California's ban would further these objectives. (See Gordon Decl., Ex. 34 at 87, 89, 97; Webster Decl. ¶¶ 12, 21, 25–26; Donohue Decl. ¶¶ 21, 29; Gordon Decl., Ex. 54 at 2; Gordon Decl., Ex. 62 at 10.) Multiple courts have found a reasonable fit between similar bans with similar stated objectives. See Kolbe, 849 F.3d at 139–41 (reasonable fit between assault weapon and LCM ban and interest in reducing harm caused by criminals and preventing unintentional misuse by otherwise law-abiding citizens); Fyock, 779

F.3d at 1000–01 (reasonable fit between LCM ban and interests in reducing the harm of intentional and accidental gun use and reducing violent crime); N.Y. State Rifle, 804 F.3d at 263–64 (reasonable fit between assault weapon and LCM ban and interest in controlling crime); Heller II, 670 F.3d at 1262–64 (reasonable fit between assault weapon and large capacity magazine ban and interest in protecting police officers and controlling crime); S.F. Veteran Police Officers, 18 F.Supp.3d at 1003–04 (reasonable fit between LCM ban and goals of protecting public safety and reducing injuries from criminal use of LCMs).

Reasonable minds will always differ on such questions as the best way to reduce the incidence and harm of mass shootings, or whether that can even be accomplished at all. In order for there to be a reasonable fit between the objective sought to be achieved and the proposed solution, however, the solution need not be the best possible means of achieving the objective. Defendants are not required to show a perfect fit, only a reasonable fit, between the ban and the important objective of easing enforcement of California's existing ban on the purchase, sale, transfer, or importation of large capacity magazines.

The prior ban did not prohibit possession, and there was no way for law enforcement to determine which magazines were "grandfathered" and which were illegally transferred or modified to accept more than ten rounds after January 1, 2000. (Gordon Decl., Ex. 46 at 3; Graham Decl. ¶ 30; Gordon Decl., Ex. 62 at 10.) The evidence indicates that a ban on the possession of large capacity magazines will help address this enforcement issue. (See Gordon Decl., Ex. 62 at 10.) Further, after the 2004 federal ban on large capacity magazines was lifted, the illegal importation of LCMs into California increased, giving further impetus to California's efforts to ease enforcement of its existing ban. (See Graham Decl. ¶ 23; Gordon Decl., Ex. 63.) The proposed ban will facilitate that effort.

The court recognizes plaintiffs' evidence that few California shootings have involved large capacity magazines, that there is no evidence that any of these shootings involved grandfathered large capacity magazines, and that violent criminals might still be capable of inflicting great harm after the enactment of a ban. (See, e.g., Moody Decl. ¶¶ 9–17; Ayoob Decl. ¶¶ 8–12.) However, it is not necessary for defendants to show, or for the court to find, that the proposed ban will eliminate all gun violence in California, or that it would have prevented any of the past incidents of gun violence. Nor is it the role of this court to judge the wisdom of the California legislature in enacting the statutes at issue here. It is only for this court to determine whether those duly enacted statutes pass constitutional muster under the test which the decisions of higher courts require this court to apply, See N.Y. State Rifle, 804 F.3d at 261 (citations omitted); Kolbe, 849 F.3d at 140.

Overall, it appears that California's stated interests of reducing the incidence and harm of mass shootings and easing enforcement of the state's existing ban "would be achieved less effectively absent the regulation," Fyock, 779 F.3d at 1000, and thus there is a reasonable fit between the ban and California's important objectives. Because of this reasonable fit, plaintiffs have not shown that the large capacity magazine ban fails intermediate scrutiny and have not shown a likelihood of success on the merits on their Second Amendment claim.

2. Irreparable Injury, Balance of Hardships, and the Public Interest

█ Because plaintiffs have not met their burden of showing the likelihood of

success on the merits of their Second Amendment claim, preliminary injunctive relief must be denied, notwithstanding the court's findings with respect to irreparable injury, balance of hardships or the public interest. See Winter, 555 U.S, at 20, 129 S.Ct. 365 ("A plaintiff seeking a preliminary injunction just establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.") (emphasis added).

■ That said, if plaintiffs are correct that the large capacity magazine ban violates the Second Amendment, it appears that plaintiffs will likely suffer irreparable injury by having to surrender their large capacity magazines, which are irreplaceable due to California's ban on the transfer of large capacity magazines, in violation of their Second Amendment rights. "[C]onstitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm." Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1059 (9th Cir. 2009) (citation omitted); see also Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) ("[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (quoting Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)).

While defendants claim there is no irreparable harm because plaintiffs may store their magazines out of state, sell them to licensed dealers, or permanently modify their magazines, there is little evidence as to whether these are in fact viable options for plaintiffs or Californians generally. Accordingly, if plaintiffs were able to show a likelihood of success on the merits of their Second Amendment claim, this factor would weigh in favor of granting a preliminary injunction.

The other Winter factors, however, do not weigh in favor of granting preliminary injunctive relief. Withholding an injunction may result in the violation of plaintiffs' Second Amendment rights and the unlawful forced loss of their personal property, but granting an injunction would also result in a substantial hardship to defendants. The State has a substantial interest in preventing and limiting gun violence, as well as in enforcing validly enacted statutes. See Maryland v. King, 567 U.S. 1301, 133 S.Ct. 1, 3, 183 L.Ed.2d 667 (2012) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). Such interest is especially strong here, where the ban was enacted first by the state legislature and then through a state-wide proposition approved by a majority of voters.

Further, while the public's interest is furthered by the protection of individuals' Second Amendment rights, assuming the ban infringes those rights, the public interest is also furthered by preventing and minimizing the harm of gun violence, and in making it easier to enforce California's existing ban on the sale, purchase, transfer, or importation of large capacity magazines, pursuant to a bill enacted by the California Legislature and a proposition approved by the California electorate.

Given the substantial hardships that may result to both sides in this litigation based on the granting or withholding of a preliminary injunction, and the dueling substantial public interests, plaintiffs have not shown that the balance of hardships or the public interest favor granting a preliminary injunction. Further, as discussed above, plaintiffs have not shown a likelihood of success on the merits of their Second Amendment claim. Accordingly, the court will deny plaintiffs' request for a

preliminary injunction based on their Second Amendment claim.

B. Takings Clause/Due Process Challenge

■ The Fifth Amendment prohibits the taking of private property for public use without just compensation. U.S. Const. amend. V. Plaintiffs argue that the magazine ban operates as an unconstitutional taking under the Fifth and Fourteenth Amendments because they will have to physically turn over their magazines for destruction or, in the alternative, they will be completely deprived of all beneficial use of their magazines, without just compensation.

Preliminarily, the court is not persuaded that plaintiffs will likely succeed on the merits of their takings claim. Plaintiffs have not cited, and the court is unaware of, any case holding that a complete ban on personal property deemed harmful to the public by the state is a taking for public use which requires compensation. Further, the Supreme Court's decision in Heller I said nothing which could be interpreted as suggesting that a city or state's ban of a previously lawful firearm or firearm component would require compensation to existing owners of those firearms or components. See Heller I, 554 U.S. at 626–27, 128 S.Ct. 2783 (stating that reasonable gun regulations were permissible and implying that a complete ban on machine guns, for example, was permissible).

A long line of federal cases has authorized the taking or destruction of private property in the exercise of the state's police power without compensation. See Mugler v. Kansas, 123 U.S. 623, 669, 8 S.Ct. 273, 31 L.Ed. 205 (1887) ("The exercise of the police power by the destruction of property which is itself a public nuisance ... is very different from taking property for public use.... In the one case, a nuisance only is abated; in the other, unof-

fending property is taken away from an innocent owner."); Akins v. United States, 82 Fed.Cl. 619, 622–23 (2008) ("Property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause" and thus no compensation was due where a federal agency ordered, pursuant to federal law, an inventor to surrender a device later classified by the agency as a machine gun) (quoting AmeriSource Corp. v. United States, 525 F.3d 1149, 1153 (Fed. Cir. 2008)); Fesjian v. Jefferson, 399 A.2d 861 (D.C. Ct. App. 1979) (no compensation is due where a municipality bans machine guns or semi-automatic weapons capable of firing more than twelve rounds without manual reloading); accord Wilkins v. Daniels, 744 F.3d 409, 419 (6th Cir. 2014) (law banning wild animals unless they were implanted with microchips did not operate as a physical taking because owners retained the ability to use and possess their animals and the implanted microchips, and the act was "close kin to the general welfare regulations that the Supreme Court ensured were not constitutionally suspect").

■ More importantly, even assuming, without deciding, that the large capacity magazine ban operates as a taking requiring just compensation, injunctive relief is generally not available for takings claims. The Takings Clause "is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of [an] otherwise proper interference amounting to a taking." First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, 482 U.S. 304, 315, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); see also Lingle v. Chevron, 544 U.S. 528, 543, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005) (Due Process clause "does not bar government from interfering with property rights" but only requires compensation in event of interference amounting to a taking) (citing First

**996**

English Lutheran Church, 482 U.S. at 315, 107 S.Ct. 2378).

As explained by one legal scholar, "if a local government is regulating land use to protect the community and the owner has the opportunity to sue for compensation based on any taking that might result, the owner cannot sue to block enforcement of the regulation under the Takings Clause." John D. Echeverria, Eschewing Anticipatory Remedies for Takings: A Response to Professor Merrill, 128 Harv. L. Rev. Forum 202, 204 (2015).[3] Moreover, "[t]he Fifth Amendment does not require that compensation precede the taking." Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1016, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) (citation omitted).

Thus, an allegation that a law operates as an illegal taking because there was no just compensation is not ground to void the law, as "the government is not prohibited from taking private property; indeed, the eminent domain clause contemplates that the government will take private property as needed for public purposes, so long as it pays compensation." Bay View, Inc. v. Ahtna, Inc., 105 F.3d 1281, 1284–85 (9th Cir. 1997) (citing Evangelical Lutheran Church, 482 U.S. at 314, 107 S.Ct. 2378).

Plaintiffs' cited cases do not establish that a preliminary injunction is available for a takings claim. Most of the cases involve California courts applying California law. Plaintiffs cite Lingle, 544 U.S. at 528, 125 S.Ct. 2074, though as discussed above, that case actually stands for the proposition that injunctive relief is generally not available for an alleged taking. Plaintiffs also cite Golden Gate Hotel Association v. City & County of San Francisco, 836 F.Supp. 707, 709 (N.D. Cal. 1993), where an injunction was granted based on a takings claim, but that decision was reversed by the Ninth Circuit based on a statute of limitations issue, 18 F.3d 1482 (9th Cir. 1994).

Plaintiffs' supplemental brief cites Babbitt v. Youpee, 519 U.S. 234, 117 S.Ct. 727, 136 L.Ed.2d 696 (1997), where Native Americans challenged a law providing that certain small interests in Indian lands would transfer (or "escheat") to the tribe upon the death of the owner of the interest if they did not generate at least $100 in income to the owner in any one of the five years before it was due to escheat. While that decision provides some support for plaintiffs' position, it did not involve review a preliminary injunction, but rather a summary judgment.

Moreover, the Court in Babbitt did not address the rule repeated in numerous cases that injunctive relief is generally not available for a takings claim, or why that rule did not apply. The Court may have found that an injunction was appropriate there because of the speculative nature of the property that was taken—a future interest in land that may or may not be lost depending on future circumstances— meaning that the normal remedy of filing suit to recover the value of the lost property was not a realistic remedy. The Court also noted the "extraordinary character" of the regulation, which "amounted to the virtual abrogation of the right to pass on a certain type of property." Id. at 239–40, 117 S.Ct. 727.

Should plaintiffs succeed on their takings claim, their only remedy is money damages, or compensation for the value of the magazines which they are forced to surrender to the state.[4] Accord United

---

3. John D. Echeverria, the author of the quoted article, is a professor at Vermont Law School, not to be confused with counsel for defendants with the same name.

4. The court expresses no opinion at this time whether this suit would be a proper vehicle for obtaining compensation from the State, though the court notes that the First Amended

States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 129 n.6, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985) (stating that if a federal government action operated as a taking of plaintiff's property, the proper course was to initiate a suit for compensation in the Court of Federal Claims). Accordingly, plaintiffs have not met their burden of showing their entitlement to a preliminary injunction based on their takings claim.

## C. Vagueness Claim

■■■ The Fifth Amendment also provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The government violates due process when it deprives an individual of life, liberty, or property pursuant to an "unconstitutionally vague" criminal statute. Johnson v. United States, — U.S. —, 135 S.Ct. 2551, 2557, 192 L.Ed.2d 569 (2015). A statute is unconstitutionally vague when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008).

■■■ First, plaintiffs claim that the ban is vague because SB 1446 and Proposition 63 created two different versions of California Penal Code § 32406, and it is not clear which version applies. SB 1446 exempts six classes of individuals/entities— (1) honorably retired law enforcement officers, (2) historical societies and museums, (3) persons who find and deliver large capacity magazines to law enforcement agencies, (4) forensic laboratories, (5) trustees and executors, and (6) persons in lawful possession of a firearm acquired prior to 2000 that is only compatible with a large capacity magazines—from the prohibition on possession of these magazines. In contrast, the Proposition 63 version only exempts honorably retired law enforcement officers. (See Pls.' Req. for Judicial Notice, Exs. C (SB 1446 Version of Cal. Penal Code § 32406), and D (Proposition 63 Version of Cal. Penal Code § 32406).) In their view, it is not clear what conduct the ban prohibits, given these dual versions of section 32406.

However, plaintiffs do not cite, and the court is unaware of, any case that has held an enactment to be void for vagueness because it conflicts with another enactment and it is not clear which enactment controls. The only case of which the court is aware where that argument was made held that such enactments were not void for vagueness. See Karlin v. Foust, 188 F.3d 446, 469 (7th Cir. 1999) (holding that the question before the court was whether one enactment impliedly repealed the other, not whether the enactments are void for vagueness).

■■■ Even if the court were to depart from Karlin and consider plaintiffs' vagueness challenge on grounds of conflicting enactments, that challenge would fail. Under California law, where two conflicting versions of the same statute are enacted at different times, the later-enacted version controls. People v. Bustamante, 57 Cal. App.4th 693, 701, 67 Cal.Rptr.2d 295 (2d Dist. 1997) (citing County of Ventura v. Barry, 202 Cal. 550, 556, 262 P. 1081 (1927) and People v. Dobbins, 73 Cal. 257, 259, 14 P. 860 (1887)). It is not beyond the capacity of individuals with ordinary intelligence to look up the enactment dates of Proposition 63 and SB 1446 and see that Proposition 63 was enacted after SB 1446. As Proposition 63 was passed after SB 1446, its version of California Penal Code § 32406 is controlling. Accordingly, the

Complaint only seeks declaratory and injunctive relief with respect to the Fifth Amendment takings claim. (See, e.g., First Am. Compl. ¶¶ 79–80.)

court rejects plaintiffs' claim that the large capacity magazine ban is unconstitutionally vague on account of the passage of both SB 1446 and Proposition 63.

Second, plaintiffs contend that the ban is vague because while it exempts possession for retired law enforcement officers, and in the case of SB 1446, trustees or administrators of estates, it does not exempt these individuals from prosecution for manufacturing, importing, keeping for sale, offering for sell, giving, lending, buying, or receiving large capacity magazines.[5] See Cal. Penal Code § 32310(a). According to plaintiffs, this "results in a paradoxical situation that retired law enforcement officers [and trustees and executors] are supposedly entrusted with the right to possess large-capacity magazines," but "cannot bring into the state, nor even receive these magazines." (Docket No. 28–1 at 42–43.)

Given the court's determination that the Proposition 63 version of the statute is controlling, SB 1446's exemption for possession of large capacity magazines by trustees or administrators of estates is no longer in effect. Looking to the ban's exemption for possession by retired law enforcement officers, the court rejects plaintiffs' contention that it is "paradoxical" to allow these individuals to possess these magazines but prohibit them from manufacturing, importing into the state, keeping for sale, offering for sale, giving, lending,

buying, or receiving them. It is entirely possible to possess a large capacity magazine without engaging in those other activities. Because there is no "paradox" in the application of the 'retired officer' exemption to California Penal Code section 32310(a), this exemption does not support plaintiffs' vagueness claim.

In sum, plaintiffs have not shown a likelihood of success on the merits as to their vagueness claim. Moreover, for the same reasons discussed above in connection with the Second Amendment claim, plaintiffs have not shown that the balance of hardships or public interest weigh in favor of granting a preliminary injunction. Accordingly, the court will deny plaintiffs' request for a preliminary injunction as to their vagueness claim.

## D. Overbreadth Claim

■ Plaintiffs argue that the large capacity magazine ban is unconstitutionally overbroad because there is no evidence that application of the ban to current owners of large capacity magazines would further the objectives of reducing mass shootings and the harm inflicted during those shootings.

First, the court is unaware of any cases applying the overbreadth doctrine in the Second Amendment context. See United States v. Chester, 628 F.3d 673, 688 (4th Cir. 2010) (Davis, J., concurring) ("[I]m-

---

5. In addition to this concern, plaintiffs contend that absence of clarification from the California Department of Justice as to a number of questions having to do with application of the magazine ban—those having to do with disposal of magazines, modification of magazines, and magazines which may accommodate different size shells—raise additional "vagueness concerns." (See Docket No. 47 at 23–24.) The court declines to consider such concerns in deciding plaintiffs' request for a preliminary injunction because the concerns were not raised in plaintiffs' moving papers. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not con-

sider arguments raised for the first time in a reply brief.") (citation omitted). Even if the court were inclined to consider such concerns, it is not persuaded that the concerns amount to anything more than marginal questions existing alongside a statute whose application is clear in the vast majority of intended applications. See Cal. Teachers Ass'n v. State Bd. of Educ., 271 F.3d 1141, 1151 (9th Cir. 2001) ("[U]ncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes 'in the vast majority of its intended applications.'") (quoting Hill v. Colorado, 530 U.S. 703, 733, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000)).

porting the overbreadth doctrine ... into the Second Amendment context would be inappropriate."); cf. United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("[W]e have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." (citation omitted)). Plaintiffs provide no reason for the court to expand the overbreadth doctrine to the Second Amendment.

Second, challenging a law on overbreadth grounds requires a showing that the law prohibits "a substantial amount" of constitutionally protected conduct. Powell's Books, Inc. v. Kroger, 622 F.3d 1202, 1208 (9th Cir. 2010). Plaintiffs fail to show what constitutionally protected conduct the law substantially prohibits. Plaintiffs argue that the law is overbroad because there is no evidence that current owners of large capacity magazines "have ever been involved in mass shootings, gun crimes, or in anything other than purely lawful activities," (Pls.' Mot. 44). However, because plaintiffs have not shown a likelihood of success on their Second Amendment claim they are similarly unlikely to succeed on their claim that the law prohibits a substantial amount of constitutionally protected conduct.

Further, for the reasons discussed above in connection with the Second Amendment claim, plaintiffs have not shown that the balance of hardships or public interest weigh in favor of granting a preliminary injunction. Accordingly, the court will deny plaintiffs' request for a preliminary injunction as to their overbreadth claim.

IT IS THEREFORE ORDERED that plaintiffs' Renewed Motion for Issuance of Preliminary Injunction (Docket No. 28) be, and the same hereby is, DENIED.