Filed 4/15/20

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>    v.<br><br>JASON BROADBENT,<br><br>      Defendant and Appellant. | C086848<br><br>(Super. Ct. No. CRF156998) |

APPEAL from a judgment of the Superior Court of Yolo County, David Rosenberg, Judge. Affirmed in part and reversed in part.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Kathleen A.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts A, B, C, E, and F and subpart D, 1 of the Discussion section (section II).

1

McKenna, Julie A. Hokans and Timothy L. O'Hair, Deputy Attorneys General, for Plaintiff and Respondent.

After a court trial, defendant Jason Broadbent was convicted of five counts of selling an assault weapon (Pen. Code., § 30600, subd. (a)—counts 1, 5, 15-17),[1] six counts of selling a large-capacity magazine (§ 32310—counts 2, 6, 13, 18-20), nine counts of possession of a firearm by a felon (§ 29900, subd. (a)—counts 3, 7, 11-12, 23-27), three counts of selling heroin (Health & Saf. Code, § 11352, subd. (a)—counts 4, 8, 28), four counts of unlicensed sale of a firearm (§§ 27545/27590, subd. (c)(5)—counts 9-10, 21-22), and one count of selling methamphetamine (Health & Saf. Code, § 11379, subd. (a)—count 14).  The court also found true that defendant had suffered a prior strike conviction (§ 667) and three prior prison terms (§ 667.5, subd. (b)).

After denying defendant's *Romero*[2] motion, the court sentenced defendant to a total term of 53 years eight months in prison.

On appeal, defendant contends:  (1) his 2001 conviction may not be used as a prior strike or to enhance his sentence under section 667.5, subdivision (b); (2) the trial court abused its discretion by denying his *Romero* motion to strike his prior strike conviction; (3) all of his sentences for selling a large-capacity magazine and all but one of his sentences for possession of a firearm must be stayed pursuant to section 654; and (4) the court imposed unlawful terms for counts 9, 10, 14, 21, and 22.  In supplemental briefing, defendant argues:  (1) his convictions for selling large-capacity magazines under section 32310 must be reversed because the statute violates the Second Amendment to the United States Constitution; (2) his prior prison term enhancements must be stricken based on recent amendments to section 667.5; and (3) he is entitled to a hearing on his present

---

[1] Undesignated statutory references are to the Penal Code.

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

2

ability to pay various fines and fees pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We agree the trial court miscalculated the sentence it imposed with respect to counts 9, 10, 14, 21, and 22. We conclude defendant's sentences on counts 2, 3, 6, 7, 11-13, and 18-20, and all but one of his sentences on counts 23-27 should have been stayed pursuant to section 654. Further, his prior prison terms enhancements must be stricken. We remand for resentencing in accordance with this opinion, but otherwise affirm the judgment.

## I. BACKGROUND

In July 2015, an undercover officer was assigned to purchase fully automatic weapons and narcotics from defendant. Because the facts pertaining to the drug purchases are not relevant to the issues raised by defendant on appeal, we omit them from our recitation of the facts.

On July 28, 2015, the officer texted defendant asking to purchase fully automatic rifles. Defendant said he could only get one and agreed to meet later that night. When they met, defendant handed the officer a short-barreled AR-15 fully automatic rifle in exchange for $1,500. A Magpul PMAG 40-round magazine was included with the rifle.

The next day, defendant sent the officer a text message with a picture of a short-barreled AR-15 rifle and letting the officer know defendant had another one for sale. They agreed to meet at the same location. Once there, the officer gave defendant a bag, and defendant returned it with a short-barreled AR-15 rifle inside. Again, the officer paid $1,500 for the rifle and a Magpul PMAG 40-round magazine was included with it.

On July 31, defendant texted the officer a picture of several guns. The officer responded that he was interested in buying "the Intratec TEC-9 and a .44 mag[num]." They met on August 4, and defendant gave the officer the firearms in exchange for cash. The TEC-9 had a magazine that held 32 rounds.

On August 18, defendant sent pictures of several pistols to the officer. They met the next day, and defendant handed the officer a fully automatic rifle that he referred to as

3

his personal gun, two other short-barreled assault rifles, and two pistols. Each rifle had a 40-round magazine. The officer gave defendant $5,600.

## II. DISCUSSION

*A.*     *Constitutionality of Section 32310*

"In 1994, Congress enacted the Violent Crime Control and Law Enforcement Act ('Crime Control Act'), which proscribed, among other things, the possession of 'large capacity ammunition feeding devices'—also defined as any magazine capable of accepting more than [10] rounds of ammunition. [Citations.] Beginning in 2000, California criminalized the manufacture, sale, purchase, transfer, and receipt of large-capacity magazines within the state, but did not specifically criminalize the possession of large-capacity magazines, which was covered at the time by federal law." (*Fyock v. City of Sunnyvale* (9th Cir. 2015) 779 F.3d 991, 994; see former § 12020, as amended by Stats. 1999, ch. 129, § 3.5.) "In 2004, the Crime Control Act lapsed, leaving a 'loophole' permitting the possession of large-capacity magazines in California." (*Fyock, supra*, at p. 994.)

In 2016, both the Legislature and the People passed amendments to section 32310 adding a prohibition on possession of large-capacity magazines to the previous prohibitions. (Stats. 2016, ch. 58, § 1; Prop. 63, § 6.1, as approved by voters, Gen. Elec. (Nov. 8, 2016).)

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

In *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*), the United States Supreme Court held that the Second Amendment protects an individual's right to keep and bear arms for the purpose of self-defense. The right, however, is not unlimited and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." (*Id*. at p. 626.) Two years after *Heller*, the court held that the

4

Fourteenth Amendment's due process clause makes the Second Amendment fully applicable to the states. (*McDonald v. City of Chicago* (2010) 561 U.S. 742, 750, 791 (*McDonald*).)

In supplemental briefing, defendant argues his convictions for selling large-capacity magazines under section 32310 must be reversed because the statute violates the Second Amendment. We disagree.[3]

After *Heller*, the federal appellate courts developed a two-step approach for assessing Second Amendment challenges. (*Gould v. Morgan* (1st Cir. 2018) 907 F.3d 659, 668 [collecting cases]; see also *U.S. v. Chovan* (9th Cir. 2013) 735 F.3d 1127, 1136.) Under this approach, courts first ask "whether the challenged law burdens conduct protected by the Second Amendment." (*U.S. v. Chovan*, *supra*, at p. 1136.) If it does, we "apply an appropriate level of scrutiny." (*Ibid*.) "Neither *Heller* nor *McDonald* discussed the applicable standard of review . . . ." (*People v. Ellison* (2011) 196 Cal.App.4th 1342, 1347; see *Heller, supra*, 554 U.S. at pp. 628-629 ["Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home 'the most preferred firearm in the nation to "keep" and use for protection of one's home and family,' [citation], would fail constitutional muster," fn. omitted].)

We assume without deciding that large-capacity magazines are entitled to Second Amendment protection, and turn to the appropriate level of scrutiny. (See *Worman v. Healey* (1st Cir. 2019) 922 F.3d 26, 36 (*Worman*) [rejecting challenge to Massachusetts law proscribing sale, transfer, and possession of certain semiautomatic assault weapons

---

[3] Defendant asserts this argument has not been forfeited for failure to assert it in the trial court because "the challenged law may be evaluated without reference to the facts of the instant case." (See *People v. Yarbrough* (2008) 169 Cal.App.4th 303, 310 [considering Second Amendment claim on the merits because the issue was one of law, would avert any claim of inadequate assistance of counsel, and *Heller* was issued after trial].) The People do not assert forfeiture.

and large-capacity magazines]; *Association of New Jersey Rifle & Pistol Clubs, Inc. v. Attorney General New Jersey* (3d Cir. 2018) 910 F.3d 106, 117 [rejecting challenge to New Jersey law prohibiting possession of magazine capable of holding more than 10 rounds of ammunition].)  Federal appellate courts generally determine the level of scrutiny to apply based on how closely the challenged law comes to the core of the Second Amendment right and the severity of the law's burden on that right.  (*U.S. v. Chovan*, *supra*, 735 F.3d at p. 1138.)  "*Heller* tells us that the core of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.' "  (*Ibid*.)  "Unlike the law held unconstitutional in *Heller*, the laws at issue here do not prohibit the possession of 'the quintessential self-defense weapon,' to wit, the handgun."  (*Heller v. District of Columbia* (D.C. Cir. 2011) 670 F.3d 1244, 1261-1262.)  Rather, section 32310 applies to "only a subset of magazines that are over a certain capacity" and does not "restrict the number of magazines that an individual may possess."  (*Fyock v. Sunnyvale*, *supra*, 779 F.3d at p. 999.)  Because section 32310 "does not completely prohibit or unduly burden the right of law-abiding persons to bear arms," we apply intermediate scrutiny.  (*People v. Ellison*, *supra*, 196 Cal.App.4th at p. 1347.)  This is consistent with the federal appellate courts, which have uniformly applied intermediate scrutiny when assessing challenges to laws restricting large-capacity magazines.  (See *Worman, supra*, at p. 38 [collecting cases]; *Fyock v. Sunnyvale, supra,* at p. 999 ["Consistent with the reasoning of our sister circuit, we also agree that intermediate scrutiny is appropriate"].)

"Under the intermediate scrutiny test, the statute must serve an important governmental interest and there should be a reasonable fit between the regulation and the governmental objective."  (*People v. Mitchell* (2012) 209 Cal.App.4th 1364, 1374; accord *U.S. v. Chovan, supra*, 735 F.3d at p. 1139.)  "[W]e review the legislative history of the enactment as well as studies in the record or cited in pertinent case law."  (*Jackson v. City & County of San Francisco* (9th Cir. 2014) 746 F.3d 953, 969.)

Relying exclusively on *Duncan v. Becerra* (S.D.Cal. 2019) 366 F.Supp.3d 1131 (*Duncan*), defendant argues section 32310 cannot even pass intermediate scrutiny because, while the state has an interest in its asserted objectives of protecting citizens and law enforcement from gun violence and preventing crime, it "does not provide an exception for former military members or those who have been vetted so as to be granted concealed carry permits" and "there is nothing special about high capacity magazines that uniquely justifies a ban." We decline to follow *Duncan*. *Duncan* is a trial court decision currently on appeal that goes against the unanimous federal appellate authorities holding that restrictions on large-capacity magazines are constitutional. (See *Worman, supra*, 922 F.3d at p. 39.) We find those authorities more persuasive. (E.g., *Id.* at pp. 38-40; *Association of New Jersey Rifle & Pistol Clubs, Inc. v. Attorney General New Jersey, supra*, 910 F.3d at pp. 119-123; *New York State Rifle & Pistol Association, Inc. v. Cuomo* (2d Cir. 2015) 804 F.3d 242, 263-264; *Kolbe v. Hogan* (4th Cir. 2017) 849 F.3d 114, 139-146; *Heller v. District of Columbia*, *supra*, 670 F.3d at pp. 1262-1264.)

As to defendant's specific arguments based on *Duncan*, first, the lack of exceptions to section 32310 is not dispositive. (See *Worman, supra*, 992 F.3d at p. 40 [rejecting argument that law failed intermediate scrutiny because it made no exception for law-abiding, responsible citizens].) "In dealing with a complex societal problem like gun violence, there will almost always be room for reasonable minds to differ about the optimal solution." (*Gould v. Morgan*, *supra*, 907 F.3d at p. 676.) "To survive intermediate scrutiny, [the government is] not required to show that [the regulation] is the least restrictive means of achieving its interest. [Citation.] Instead, [the government is] required to show only that [the regulation] promotes a 'substantial government interest that would be achieved less effectively absent the regulation.' " (*Fyock v. Sunnyvale*, *supra*, 779 F.3d at p. 1000.)

Secondly, we are not persuaded by defendant's assertion that section 32310 is not sufficiently justified. A review of the federal appellate authorities, as well as the studies

7

they discuss, leads us to conclude that section 32310 is substantially related to the goal of protecting Californians' safety and reducing gun violence. In *Fyock v. Sunnyvale, supra*, 779 F.3d 991, the Ninth Circuit concluded that the district court did not abuse its discretion in finding that the City of Sunnyvale's ordinance, which restricted possession of magazines capable of holding more than 10 rounds, was likely to survive intermediate scrutiny. (*Id*. at pp. 994, 1000-1001.) Sunnyvale presented evidence that large-capacity magazines cause more shots to be fired and more gunshot wounds per victim, increase the lethality of gunshot wounds, and are disproportionately used in mass shootings and in crimes against law enforcement. (*Id*. at p. 1000.) The city also submitted studies showing that a reduction of large-capacity magazines in circulation could decrease their use in gun crimes. (*Ibid*.) "[T]he record also contained studies indicating that most defensive gun use incidents involved fewer than [10] rounds of ammunition." (*Ibid*.) Similarly, in *Heller v. District of Columbia*, *supra*, 670 F.3d 1244, to justify its prohibition on possession of magazines capable of holding more than 10 rounds, the District of Columbia provided evidence that attacks involving use of such magazines result in more persons wounded and more wounds per victim. (*Id*. at p. 1263.) In *Kolbe v. Hogan, supra,* 849 F.3d 114, to justify a ban on the sale and receipt of large-capacity magazines, Maryland "pointed to an important lesson learned" from recent mass shootings—reducing the number of rounds that can be fired without reloading increases the odds that lives will be spared because reloading provides an opportunity for bystanders or law enforcement to intervene during a pause in firing. (*Id*. at p. 128.)

Likewise, when enacting its legislation banning the possession of large-capacity magazines in 2016, our Legislature observed there had been at least 50 mass shootings involving large-capacity magazines since 1980, including three in 2015, and that such magazines "allow a shooter to rapidly fire without reloading." (Sen. Com. On Public Safety, Analysis of Sen. Bill No. 1446 (2015-2016 Reg. Sess.) p. 5.) The Legislature reasonably determined that restricting large-capacity magazines within California would

8

reduce the incidence of and harm caused by mass shootings given the unique risks posed by these magazines. "[T]he State has shown all that is required: a reasonable, if not perfect, fit between [the challenged law] and [the State's] interest in protecting public safety." (*Kolbe v. Hogan, supra*, 849 F.3d at pp. 140-141.) We therefore conclude section 32310 does not violate the Second Amendment.

## B.    Prior Strike

In 2001, defendant pled no contest to a charge that he committed animal cruelty and personally used a firearm in the commission of that offense by shooting a dog. (Former § 12022.5, subd. (a)(1).) Defendant was 14 years old at the time of the offense. In these proceedings, the trial court found that the 2001 conviction was a prior strike, doubling each term on defendant's sentence. Defendant challenges the use of his 2001 conviction as a strike under multiple theories.

### 1.    Estrada

Defendant argues Senate Bill No. 1391 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1012, § 1) (Senate Bill No. 1391) "is applicable to [defendant] under [*In re*] *Estrada* [(1965) 63 Cal.2d 740 (*Estrada*)] and bars the use as a strike of his adult conviction for a crime committed when he was 14 years old." We conclude nothing in Senate Bill No. 1391 precludes the use of defendant's 2001 conviction as a strike.

We first review the relevant statutory background. " 'Historically, a child could be tried in criminal court only after a judicial determination, before jeopardy attached, that he or she was unfit to be dealt with under juvenile court law. Since 1975 the procedural requirements for fitness hearings have been established by [Welfare and Institutions Code] section 707.' [Citation.] The general rule used to be that 'any individual less than 18 years of age who violates the criminal law comes within the jurisdiction of the juvenile court, which may adjudge such an individual a ward of the court.' " (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 305 (*Lara*).) "Indeed, for decades only those minors who were at least 16 years of age at the time of the offense

9

could be transferred to criminal court. [Citations.] However, in 1994, the Legislature expanded that group to include minors aged 14 or 15 at the time of the offense, for certain charged crimes and with certain limiting circumstances. [Citations.] At that time, any transfer of a minor was still subject to a judicial determination of unfitness." (*People v. Superior Court (K.L.)* (2019) 36 Cal.App.5th 529, 537.)

At the March 7, 2000, Primary Election, voters approved Proposition 21, which "revised the juvenile court law to broaden the circumstances in which minors 14 years of age and older [could] be prosecuted in the criminal division of the superior court, rather than in juvenile court. [Welfare and Institutions Code s]ection 707[, subdivision ](d), as amended by the initiative, authorize[d] specified charges against certain minors to be filed directly in a court of criminal jurisdiction, without a judicial determination of unfitness under the juvenile court law." (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 549.) This was the relevant law at the time of defendant's 2001 offense.[4] Direct filing in the trial court was permitted because of the allegation that defendant personally used a firearm in the commission of the offense. (Prop. 21, § 26, eff. Mar. 8, 2000); former Welf. & Inst. Code, § 707, subd. (d)(2)(B).)

In 2016, "Proposition 57 changed the procedure again, and largely returned California to the historical rule. 'Among other provisions, Proposition 57 amended the Welfare and Institutions Code so as to eliminate direct filing by prosecutors. Certain categories of minors . . . can still be tried in criminal court, but only after a juvenile court judge conducts a transfer hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated." (*Lara*, *supra*, 4 Cal.5th at p. 305.) As relevant to this proceeding, individuals charged with personal use of a firearm under section 12022.5 when they were

---

[4] Nonetheless, the trial court found that defendant was unfit to be dealt with under the juvenile court law based on his prior juvenile history.

10

14 or 15 could still be tried in criminal court. (See Ballot Pamp., Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 4.2, p. 143.)

In 2018, the Legislature enacted the law at issue here, Senate Bill No. 1391, which all but eliminates prosecutors' ability to seek transfer hearings for individuals who were 14 and 15 at the time of their offense, "effectively raising the minimum age a child can be tried as an adult from 14 to 16." (*B.M. v. Superior Court* (2019) 40 Cal.App.5th 742, 746.)[5]

"When a defendant is convicted of a felony, and it is pleaded and proved that he has committed one or more prior felonies defined as 'violent' or 'serious,' sentencing proceeds under the Three Strikes law '[n]otwithstanding any other law[.]' (§ 667, subd. (c); § 1170.12, subd. (a).)" (*Romero, supra*, 13 Cal.4th at p. 505.) Some juvenile adjudications qualify as a prior serious or violent felony conviction if the defendant was 16 or older at the time of the prior offense. (§§ 667, subd. (d)(3), 1170.12, subd. (b)(3).) Thus, as defendant notes, unless the individual was apprehended after aging out of the jurisdiction of the juvenile court, it is no longer possible to earn a strike based on a crime committed at the age of 14 or 15. This is not because of any recent changes to the Three Strikes law, but because of the interplay between this law and recent changes to the juvenile court law. Put differently, as a collateral consequence of the fact that 14- and 15-year-olds can no longer be tried as adults, they can no longer accumulate a strike.

Defendant argues Senate Bill No. 1391 should also prevent the use of his 2001 conviction as a strike under *Estrada*. In *Estrada, supra*, 63 Cal.2d 740, our Supreme Court addressed the applicability of a criminal statute that mitigated the punishment for a crime after the prohibited act was committed but before final judgment was entered. (*Id.*

---

[5] An exception not applicable to these proceedings exists for individuals who were not apprehended prior to the end of juvenile court jurisdiction. (Welf. & Inst. Code, § 707, subd. (a)(2).)

at p. 742.) The court held that the punishment provided by the amended statute applied. (*Ibid*.) It explained: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Id*. at p. 745.) "The *Estrada* rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not." (*People v. Conley* (2016) 63 Cal.4th 646, 657.) The *Estrada* rule has no application to this proceeding because defendant's prior felony conviction is final and nothing about Senate Bill No. 1391 alters its status or the application of the Three Strikes Law to him.

*People v. Buycks* (2018) 5 Cal.5th 857 illustrates the limits of defendant's argument. In *Buycks*, our Supreme Court addressed the effect of Proposition 47, the Safe Neighborhoods and Schools Act, on felony-based enhancements. (*Buycks, supra*, at p. 870.) "Proposition 47 reclassified as misdemeanors certain offenses that previously were felonies or 'wobblers.' It also added []section 1170.18, which permits those previously convicted of felony offenses that Proposition 47 reduced to misdemeanors to petition to have such felony convictions resentenced or redesignated as misdemeanors. Section 1170.18 allows those currently serving sentences for Proposition 47 eligible felony convictions to petition to have their sentences recalled and be 'resentenced to a misdemeanor.' (§ 1170.18, subd. (b).) It also allows those who have already completed their sentences for Proposition 47 eligible felony convictions to petition to have their

12

convictions 'designated as misdemeanors.' (§ 1170.18, subd. (f).) Once an offense is resentenced or redesignated as a misdemeanor it 'shall be considered a misdemeanor for all purposes.' ([] § 1170.18, subd. (k).)" (*Buycks, supra*, at p. 871, fns. omitted.) The court in *Buycks* explained that "a successful Proposition 47 petitioner may subsequently challenge, under subdivision (k) of section 1170.18, any felony-based enhancement that is based on that previously designated felony, now reduced to misdemeanor, so long as the judgment containing the enhancement was not final when Proposition 47 took effect." (*Buycks, supra*, at p. 879.) Thus, while defendant could challenge the use of a prior felony that has been redesignated (under Proposition 47 or other similar scheme) to enhance his current sentence, Senate Bill No. 1391 does not redesignate any prior convictions or otherwise address their status.[6]

*People v. Flores* (1979) 92 Cal.App.3d 461, relied upon by defendant, is also distinguishable for this reason. In *Flores*, the defendant challenged the trial court's imposition of a one-year enhancement under section 667.5 based on his previous conviction for possession of marijuana. (*Flores, supra*, at p. 470.) A subsequent statutory amendment made possession of marijuana a misdemeanor. (*Ibid*.) *Flores* did not involve "legislative silence with respect to its purpose regarding penalties." (*Id*. at p. 471.) Rather, the Legislature had enacted laws authorizing the superior court to order the destruction of records of convictions for possession of marijuana, and providing that any records should not be considered accurate or relevant. (*Ibid*.) The court concluded, "In

---

[6] In *Lara*, our Supreme Court addressed the applicability of Proposition 57 to a proceeding in which a defendant was charged in criminal court based on crimes he allegedly committed in 2014 and 2015 when he was 14 and 15 years old. (*Lara, supra*, 4 Cal.5th at p. 303.) The court held that *Estrada*'s inference of retroactivity applied to require a transfer hearing as "to all juveniles charged directly in adult court whose judgment was not final at the time it was enacted." (*Lara, supra*, at pp. 303-304.) Neither Proposition 57 nor Senate Bill No. 1391 has been held to apply to convictions that were final at the time the laws were enacted.

13

view of the express language of the statute and the obvious legislative purpose, it would be unreasonable to hold that the Legislature intended that one who had already served a felony sentence for possession of marijuana should be subjected to the additional criminal sanction of sentence enhancement." (*Id*. at p. 473.) No similar express language or obvious legislative purpose to prevent future collateral consequences of a previous felony conviction appears in Senate Bill No. 1391.

Defendant's contention that "[t]here is no way the legislature intended that a prior conviction such as [his] have continuing viability as a strike" is a policy argument not based in text. Though the Legislature has clearly indicated its intent to undo the prior law permitting adjudication in a criminal court of similar future crimes committed by juveniles, it offers no remedy for those adults who were tried and punished under this scheme when they were juveniles. Further, "no legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law. Where, as here, 'the language of a provision . . . is sufficiently clear in its context and not at odds with the legislative history, . . . "[there is no occasion] to examine the additional considerations of 'policy' . . . that may have influenced the lawmakers in their formulation of the statute." ' " (*Rodriguez v. United States* (1987) 480 U.S. 522, 525-526 (*per curiam*); accord *County of Sonoma v. Cohen* (2015) 235 Cal.App.4th 42, 48.) This is true even where legislation calls for "liberal construction." (See, e.g., *Foster v. Workers' Comp. Appeals Bd*. (2008) 161 Cal.App.4th 1505, 1510 [workers' compensation law].) Senate Bill No. 1391 does not prevent the use of defendant's 2001 conviction as a strike.

### 2. *Equal Protection*

Defendant contends allowing his 2001 conviction to be used as a strike would violate his right to equal protection under the state and federal Constitutions. "To

14

succeed on [a] claim under the equal protection clause, [an appellant] first must show that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." (*Manduley v. Superior Court*, *supra*, 27 Cal.4th at p. 568.) Defendant argues "the challenged classification separates into two groups those individuals charged as adults with identical crimes who engaged in identical criminal conduct as juveniles under the age of 16. The first group is those individuals whose prior conduct resulted in criminal convictions under the law prior to Senate Bill No. 1391's enactment. The second group is those individuals who could not be charged as adults because of Senate Bill No. 1391." In other words, defendant's challenge is based on the effective date of the Legislature's changes to juvenile court law. However, " '[t]he Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time.' [Citation.] Therefore, defendant's equal protection claim must fail." (*People v. Floyd* (2003) 31 Cal.4th 179, 191.)

        *3.     Romero*

Defendant alternatively argues the trial court abused its discretion in denying his *Romero* motion to strike his prior strike conviction. We disagree.

        *a.     Additional Background*

Defendant filed a *Romero* motion prior to trial. In it, he noted that he was 14 years old at the time of the strike offense, and if the charges were brought at the time he filed his motion, he might not have been tried as an adult. Defendant asserted that trying him as an adult gave him little chance of success: "When the court made its decision to treat him as an adult and not provide him with a chance at rehabilitation, [it] basically guaranteed him a life that would involve convictions, prison, and parole and that is exactly what happened." Defendant added that while he has other felonies on his record, none of them rise to the level of a strike. Defendant further contended doubling his sentence effectively gives him a life sentence.

The prosecution opposed the motion based on the seriousness of the current offense and the prior strike, and also defendant's criminal record. After being paroled on April 13, 2005, for his strike offense, defendant was returned to prison on a parole violation later that year and paroled again in July 2006. A month later, defendant was convicted of possession of a firearm by a convicted felon. After his release from prison, he was returned to custody multiple times for violating his parole. Defendant was released from parole in April 2011, arrested a year later, and ultimately convicted of two counts of possession of a firearm by a felon and sentenced to prison. Defendant was released in March 2014 and began committing the present offenses in July 2015.

The court addressed the *Romero* motion after trial. It explained that it "looked at the criteria, the five criteria the Court must consider before a strike is stricken."[7] The court denied the motion because it could not find "that the criteria allow[ed] the Court to strike the strike. So in the Court's discretion, after analyzing the criteria, the motion [was] denied."

Section 1385 gives the trial court authority in furtherance of justice to order an action dismissed. (§ 1385, subd. (a).) In *Romero*, the California Supreme Court held that a trial court may utilize section 1385 to dismiss a prior strike conviction allegation for purposes of sentencing under the Three Strikes law. (*Romero, supra,* 13 Cal.4th at p. 504.) A trial court's ruling denying a request to dismiss a prior strike conviction allegation "is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).)

---

[7] In deciding whether to dismiss a prior strike conviction allegation, a trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

"In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at pp. 376-377.)

In *Carmony*, the Supreme Court explained: " '[T]he Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' " (*Carmony, supra*, 33 Cal.4th at p. 377.) "Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Id*. at p. 378) Reversal is justified where the trial court was unaware of its discretion to dismiss a prior strike or considered impermissible factors in declining to dismiss. (*Ibid*.) But where " 'the trial court balanced the relevant facts and reached an

17

impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.' " (*Ibid*.)

### b. No Abuse of Discretion

We find no abuse of discretion. The trial court was aware of its discretion and considered the relevant factors in ruling on defendant's motion. Defendant contends recent changes in the law "reflect a determination by the legislature and the electorate" that use of his 2001 conviction as a prior strike violates the spirit of the Three Strikes law. Defendant also notes that, were he charged with his 2001 crime now, the court could have stricken his firearm enhancement in the interest of justice. He argues in summation, "In light of the clear intent of the electorate and legislature and the evolving scientific consensus on brain development in youth, it was manifestly an abuse of discretion to deny the *Romero* motion and use [defendant]'s prior conviction as a strike." We disagree. As we have set forth above, the recent changes made by the electorate and the Legislature were not made to the Three Strikes law. They simply do not speak to adults who did not receive the benefits of the current statutory scheme. As no intent has been expressed to prevent prior felony convictions committed by 14- and 15-year-olds who are now adults from being used as a strike, we cannot conclude the trial court's decision is outside the spirit of the Three Strikes law or that it abused its discretion by denying defendant's *Romero* motion.

### C. Prior Prison Term Enhancements

As set forth above, the trial court found true that defendant had served three prior prison terms within the meaning of section 667.5, subdivision (b). One of these was the 2001 conviction we just discussed. Defendant similarly challenges the use of this conviction to enhance his sentence under section 667.5, subdivision (b). Additionally, the parties submitted supplemental briefing on the applicability of Senate Bill No. 136 (2019-2020 Reg. Sess.), which amended section 667.5, effective January 1, 2020 (Stats. 2019, ch. 590, § 1). This bill limited eligibility for the one-year prison prior enhancement

18

to people who have served a sentence for a sexually violent offense, as defined. (§ 667.5, subd. (b).) Defendant argues, and the People concede, that all three prior prison term enhancements should be stricken because none of them were based on a sexually violent offense. We accept the People's concession. Because defendant's conviction is not yet final, he is entitled to the retroactive benefit of Senate Bill No. 136's elimination of these enhancements. (*People v. Jennings* (2019) 42 Cal.App.5th 664, 682.) Therefore, we need not address defendant's arguments regarding only the prison prior based on his 2001 conviction.[8] Because the trial court did not impose the maximum sentence, we will remand for resentencing. (See *People v. Hill* (1986) 185 Cal.App.3d 831, 834.)

D.     *Section 654*

Defendant raises multiple challenges under section 654. He argues the trial court's imposition of separate sentences for possession of firearms and selling a large-capacity magazine violated section 654 because the sale of the same firearms was also punished. We agree.

Section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." The statute does not prohibit multiple convictions for the same conduct, only multiple punishments. (*People v. Monarrez* (1998) 66 Cal.App.4th 710, 713.) "In such a case, the proper procedure is to stay execution of sentence on one of the offenses." (*Ibid.*)

---

[8] Defendant's opening brief also argues, and the People concede, that the clerk's minutes and abstract of judgment must be corrected to show defendant was found to have served three rather than four prison terms within the meaning of section 667.5, subdivision (b). We will not order corrections specific to this issue because we conclude all of the prior prison term enhancements must be stricken.

"Section 654 precludes multiple punishments for a single act or indivisible course of conduct." (*People v. Hester* (2000) 22 Cal.4th 290, 294.) " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*People v. Correa* (2012) 54 Cal.4th 331, 336.) An implicit determination that there was more than one objective is a factual determination that must be sustained on appeal if it is supported by substantial evidence. (*People v. Osband* (1996) 13 Cal.4th 622, 730.)

      *1.      Possession of A Firearm*

Defendant argues the imposition of separate sentences for possession and sale of the same firearms violated section 654. He argues, and the People concede, that all but one of the concurrent sentences imposed for counts 3, 7, 11-12, and 23-27[9] must be stayed. We accept the People's concession. "[A] single possession or carrying of a single firearm on a single occasion may be punished only once under section 654." (*People v. Jones* (2012) 54 Cal.4th 350, 357 (*Jones II*).) Whether possession of a firearm by a felon " ' "constitutes a divisible transaction from the offense in which he employs the weapon depends upon the facts and evidence of each individual case. Thus where the evidence shows a possession distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved. On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense." ' " (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) Similarly, with respect to narcotics, "the sale and possession of the same drug can be punished separately

___

[9] Counts 23-27 relate to the August 19 sale, but the complaint does not specify which gun relates to each count.

20

if the sale consumes only part of a defendant's entire inventory of drugs." (*People v. Barger* (1974) 40 Cal.App.3d 662, 672.) As the People concede, with the exception of his personal weapon, defendant only possessed the firearm to facilitate the sale. Under these circumstances, all of the possession counts that did not relate to the sale of his personal firearm should have been stayed. On remand, the trial court may not impose separate sentences for possession and sale of the same firearms.

2.      *Selling a Large-Capacity Magazine*

Defendant argues the imposition of separate punishments for the sale of weapons and their attached magazines violated section 654. The People contend separate punishment is appropriate because assault rifles and large-capacity magazines are distinct items of contraband and not necessary to the sale of the other. "In some situations, physical acts might be simultaneous yet separate for purposes of section 654." (*Jones II, supra*, 54 Cal.4th at p. 358.) The court in *Jones II* gave as an example " 'simultaneous possession of different items of contraband.' " (*Ibid*.) It explained, " 'the possession of one item is not essential to the possession of another separate item. One does not possess in the abstract; possession is meaningless unless something is possessed. The possession of each separate item is therefore a separate act of possession.' [Citation.] We do not intend to cast doubt on the cases so holding." (*Ibid*.) A defendant found with a cache of guns may be punished separately for multiple counts of being a felon in possession of a firearm. (*People v. Correa*, *supra*, 54 Cal.4th at pp. 334, 346.) Our legislature has also made clear that an individual may be punished multiple times for selling several assault weapons. (See § 30600, subd. (c) ["Except in the case of a first violation involving not more than two firearms as provided in Sections 30605 and 30610, for purposes of this article, if more than one assault weapon or .50 BMG rifle is involved in any violation of this article, there shall be a distinct and separate offense for each"].) The Legislature has also made each violation of section 32310 "a distinct and separate offense." (§ 17800; see §16590, subd. (*l*).) The Legislature has not stated, nor are we aware of any case law

21

which concludes, that any sale of an assault weapon in violation of section 30600 is a distinct and separate offense from any sale of a large-capacity magazine in violation of section 32310.

Courts have found section 654 prohibits punishing a defendant for both being a felon in possession of a firearm and unlawful possession of ammunition when all of the ammunition in question was loaded into the firearm or had been fired from it. "To allow multiple punishment for possessing ammunition *in a firearm* would, in our judgment, parse the objectives too finely. While there may be instances when multiple punishment is lawful for possession of a firearm and ammunition, . . . [w]here, as here, all of the ammunition is loaded into the firearm, an 'indivisible course of conduct' is present and section 654 precludes multiple punishment." (*People v. Lopez* (2004) 119 Cal.App.4th 132, 138, italics added; see *People v. Sok* (2010) 181 Cal.App.4th 88, 100 [possession of firearm and ammunition not separately punishable because the ammunition was loaded into the gun or had been fired from it].)[10] We conclude a similar rule applies here. No substantial evidence supports the conclusion that the weapons and the magazines included with them were separate items of contraband. The officer testified that he was offered and purchased specific firearms from defendant, and when he received them the high-capacity magazines were included. Defendant likewise testified that the magazines were attached to and inside the rifles. (See *Kolbe v. Hogan, supra*, 849 F.3d at p. 125 ["Large-capacity magazines are a feature common . . . to the banned assault weapons"]; *Duncan, supra,* 366 F.Supp.3d at p. 1145 [AR-15 style rifles are typically sold with 30-

---

[10] The People's attempt to suggest that *Jones II, supra*, 54 Cal.4th 350 cast some doubt on the continuing viability of *People v. Lopez, supra*, 119 Cal.App.4th 132 is not well-taken. The court in *Jones II* overruled *In re Hayes* (1969) 70 Cal.2d 604. (*Jones II, supra*, at p. 358.) In so doing, it noted that *Lopez* "found a section 654 violation in a way that seems inconsistent with *Hayes's* rationale." (*Jones II, supra*, at p. 357.) Nothing about this observation undermines *Lopez*.

22

round magazines].) On remand, the court may not impose separate punishments for the sale of weapons and their included magazines.

## E. Unauthorized Sentences

Defendant's opening brief and the People's response agree that the trial court miscalculated the sentence it imposed with respect to counts 9, 10, 14, 21, and 22. With respect to each count, the court pronounced a sentence of one-third the middle term doubled to be run consecutively. However, the court misidentified one-third the middle term for these counts. For unlicensed sale of a firearm (§§ 27545/27590, subd. (c)(5)— counts 9-10, 21-22) one-third the middle term is eight months (not one year as identified by the court), and doubling that produces a sentence of 16 months (not two years). (§ 1170, subd. (h)(1).) For selling methamphetamine (count 14), one-third the middle term is one year (not 16 months), and doubling that produces a sentence of two years (not 32 months). (Health & Saf. Code, § 11379, subd. (a).) As we have previously indicated, the parties now agree resentencing is otherwise required. At resentencing, the court is ordered to impose the correct terms for these counts.

## F. Dueñas

At sentencing, the trial court ordered defendant to pay a $300 restitution fine under section 1202.4, a $1,120 court operations assessment under section 1465.8, and an $840 court facilities assessment under Government Code section 70373. Defendant did not object to, and he did not alert the court to any issues relating to his ability to pay. On appeal, defendant argues that, pursuant to *Dueñas, supra*, 30 Cal.App.5th 1157, he is entitled to a hearing on his present ability to pay these fines and fees as a matter of due process. *Dueñas* held "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under []section 1465.8 and Government Code section 70373." (*Dueñas, supra*, 30 Cal.App.5th at p. 1164.) The *Dueñas* court also held "that although []section 1202.4 bars consideration of a defendant's ability to pay unless

23

the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Ibid*.) We are not persuaded that the analysis used in *Dueñas* is correct.

Our Supreme Court is now poised to resolve this question, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47 (*Kopp*), review granted November 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments under section 1465.8 and Government Code section 70373, but not restitution fines under section 1202.4. (*Kopp, supra*, at pp. 95-96.)

In the meantime, we join those authorities that have concluded the principles of due process do not require determination of a defendant's present ability to pay before imposing the fines and assessments at issue in *Dueñas* and in this proceeding. (*People v. Kingston* (2019) 41 Cal.App.5th 272, 279; *People v. Hicks* (2019) 40 Cal.App.5th 320, 329, review granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.) Having done so, we reject defendant's *Dueñas* challenge to the above-referenced fines, fees, and assessments.

## III. DISPOSITION

The sentence is vacated. The matter is remanded to the trial court for resentencing in accordance with this opinion. In all other respects, the judgment is affirmed.

/S/

—————————————————
RENNER, J.

We concur:

/S/

—————————————————
RAYE, P. J.

/S/

—————————————————
BLEASE, J.